# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARTWAN DEAIRE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
September 14, 2017

No. 329134
Genesee Circuit Court
LC No. 14-035440-FC

AFTER REMAND

Before: TALBOT, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

Following a joint trial with co-defendant Justin Walker, a jury convicted defendant of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), felon in possession of a firearm (felon-in-possession), MCL 750.224f, felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a third offense habitual offender, MCL 769.11, to concurrent terms of 10 to 20 years in prison for armed robbery, 18 months to 5 years for felon-in-possession, 14 months to 4 years for felonious assault, and a consecutive term of 7 to 20 years' imprisonment for home invasion as well as a consecutive two year term for felony-firearm. Defendant appealed to this Court as of right and filed a motion to remand for an evidentiary hearing. We granted defendant's motion to remand,[1] and the case is now before us following an evidentiary hearing. For the reasons explained in this opinion, we affirm defendant's convictions, but we remand to the trial court for an articulation of the court's rationale for imposing defendant's home invasion sentence as a consecutive sentence.

Defendant's convictions arise from a home invasion and armed robbery on April 6, 2014. The prosecutor's principal witness was Christopher Williams, who lived in a house in Flint with his father, Rodrick Williams. According to Christopher, on the date in question, three armed men—defendant, co-defendant, and someone named "Trell"—entered his home and robbed him

---

[1] *People v Johnson*, unpublished order of the Court of Appeals, entered January 11, 2017 (Docket No. 329134).

-1-

at gunpoint. Defendant in particular put a gun to Christopher's head and grabbed him by the neck. Trell stole about $470 from Christopher's pocket and grabbed an electronic tablet off the table. The robbers also stole a jar of marijuana from the basement. Christopher personally knew defendant, co-defendant, and Trell, and he was able to identify them as the intruders. Christopher described defendant and co-defendants as his long-term friends, while Trell was a more recent acquaintance, whose last name Christopher did not know.

Rodrick was also in the house at the time of the robbery. He testified that he entered the kitchen after hearing a loud noise, and that he found a man with a gun holding Christopher in a chokehold. Christopher's girlfriend, Lashera Hearns, was in the basement when the robbers entered the house. She heard "tussling" from upstairs, and she testified that co-defendant came downstairs with a gun and took a jar of marijuana from a table. Christopher's cousin, Shawn Dixon, opened the front door, but did not admit anyone into the house. She was in the basement when she heard a lot of noise from upstairs, like "wrestling." Two or three men then came downstairs to the basement and "rambl[ed] for stuff."

Defendant and co-defendant were tried together before the same jury. Both defendant and co-defendant denied being at Christopher's house or taking part in the robbery. They each presented separate alibi defenses. Defendant testified that, on the day of the home invasion, he was home "all day" with his girlfriend, though there were discrepancies in defendant's alibi insofar as he previously filed an alibi notice with a different address than the one he provided at the time of trial. Defendant also did not call any witnesses to support his alibi. In comparison, co-defendant testified that he spent the day moving to a new apartment. A neighbor confirmed at trial that, in the timeframe when the robbery was committed, she saw co-defendant and another man unloading several car loads of items over the course of several hours and that co-defendant borrowed a screwdriver from her during that time. The jury found co-defendant not guilty of all charges. In contrast, the jury convicted defendant as noted above.

Defendant appealed as of right to this Court and filed a motion to remand. Specifically, among other arguments, defendant claimed that he had been treated differently than co-defendant, in terms of where a deputy stood while they were each testifying, and that this difference prejudiced his defense by alerting the jury that he was in custody and suggesting that he was a dangerous individual who needed to be "guarded." We granted defendant's motion to remand and ordered the trial court to conduct an evidentiary hearing with regard to the deputy's location and the effectiveness of counsel's representation. After holding such a hearing, the trial court determined that defendant was not prejudiced by the deputy's location or defense counsel's failure to object to the deputy's location during defendant's testimony. The case is now before us following remand.

## I. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first maintains that the evidence was insufficient to support three of his convictions. Specifically, his appellate counsel argues that the evidence was insufficient to support his conviction for first-degree home invasion because Christopher allowed Trell to enter the house and defendant, who was friends with Christopher, simply followed Trell through an open door without any indication that he did not have permission to enter. In a Standard 4 brief, defendant likewise challenges the sufficiency of the evidence supporting his home invasion

conviction, contending that there was no evidence of "forced entry" and that Christopher was not credible. In addition, in his Standard 4 brief, defendant also argues that there was no evidence that defendant possessed a firearm, meaning that the evidence was insufficient to support his felon-in-possession and felony-firearm convictions. We disagree.

We review de novo challenges to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

The crime of first-degree home invasion has "alternative elements" and, accordingly, it "can be committed in several different ways." *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). The elements are that the defendant (1) "breaks and enters a dwelling" *or* "enters a dwelling without permission," (2) "intends when entering to commit a felony, larceny, or assault in the dwelling" *or* "at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault," and (3) "the defendant is armed with a dangerous weapon" *or* "another person is lawfully present in the dwelling." *Id.*; MCL 750.110a(2). In this case, only the first element is in dispute, particularly the parties debate whether defendant entered "without permission."[2] As defined by statute, "'without permission' means without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." MCL 750.110a(1)(c).

With regard to permission, Christopher expressly testified that he did not give defendant permission to enter the house on the night in question. According to Christopher, he went to the door and he allowed Trell to enter. At that time, Christopher did not even see defendant outside, and he did not give him permission to enter. When specifically asked if defendant had permission to enter the house that night, Christopher answered "no."

In contrast to Christopher's testimony, defendant argues that some sort of general permission to enter should be inferred because Christopher was friends with defendant,

_____

[2] With regard to the first element, the prosecutor's theory at trial was that defendant entered the house "without permission." In contrast, insofar as defendant contends in his Standard 4 brief that there was no evidence he gained entry through "force," it appears that defendant is focused on home invasion accomplished through breaking and entering. See *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441 (1998) ("[A]ny amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking."). However, because first-degree home invasion can be accomplished in alternate ways and because the jury was instructed on the "without permission" alternative, it was not necessary for the prosecutor to establish that defendant gained entry through the use of force. See *Wilder*, 485 Mich at 43. Thus, defendant's argument premised on the lack of force is without merit.

defendant had been in his house previously, and the door was still open when defendant entered the house after Trell. However, there was no evidence that defendant had a standing invitation to enter the house whenever he pleased, and neither the open door nor defendant's friendship with Christopher gave defendant the right to enter the dwelling. Cf. *People v Dunigan*, 299 Mich App 579, 583-584; 831 NW2d 243 (2013) (concluding that dating relationship and the fact that the defendant had spent some nights in the house did not give him the right to enter his girlfriend's home). In any event, it was for the jury to determine whether defendant entered "without permission." Viewing the evidence in a light most favorable to the prosecution, given Christopher's testimony, a reasonable jury could conclude that defendant entered "without permission," and thus the evidence was sufficient to support defendant's conviction for first-degree home invasion.

To obtain a conviction for felon-in-possession, the prosecutor must show that "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored." *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016); MCL 750.224f. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Both offenses involve "possession" of a firearm. "Possession of a firearm can be actual or constructive, joint or exclusive." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). Possession is a factual question for the jury, and it can be proved by circumstantial or direct evidence. *Id.*

In this case, Christopher testified that defendant possessed a gun. Indeed, Christopher testified that defendant grabbed him by the neck and held the gun to his head. Christopher specified that the gun looked like a .38 caliber handgun. Further, although Rodrick could not identify defendant, his testimony corroborated Christopher's description of events to the extent that Rodrick saw a man with a gun holding Christopher in a chokehold. Given this eyewitness testimony, the credibility of which was for the jury, there was sufficient evidence to establish that defendant possessed a gun and thus the evidence was sufficient to support his convictions for felony-firearm and felon-in-possession.

## II. INDICIA OF INCARCERATION

Next, defendant argues that he was denied a fair trial by indicia of incarceration used during trial. First, in his Standard 4 brief, defendant argues that leg restraints were unnecessary and that the use of these restraints suggested to the jury that defendant was a hardened criminal, particularly when co-defendant, who was on bond, was not similarly restrained. Second, defendant and his appellate counsel contend that defendant was improperly moved to the witness stand out of the presence of the jury and then "guarded" by a deputy during defendant's trial testimony. Because co-defendant was not similarly "guarded," defendant argues that this practice was inherently prejudicial and, given that co-defendant was found not guilty, defendant contends that the disparate treatment between defendant and co-defendant actually prejudiced his defense. Alternatively, to the extent defense counsel approved of any of these courtroom procedures, defendant asserts that counsel provided ineffective assistance. We disagree.

### A. LEG RESTRAINTS

"Every defendant has a due process right to a fair trial, which includes the right to be presumed innocent." *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010). The presumption of innocence can be negatively affected if a defendant appears before the jury in shackles or handcuffs, and thus an important component of a fair trial is the right to appear at trial without any physical restraints. *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002). However, the right to be free from restraints is not absolute. *Id.* Rather, the trial court has discretion to shackle a defendant when there has been a finding supported by record evidence that restraint is "necessary to prevent escape, injury to persons in the courtroom or to maintain order." *People v Dunn*, 446 Mich 409, 425; 521 NW2d 255 (1994). Notably, even if a trial court's decision to require restraints is an abuse of discretion, a defendant must show that he suffered prejudice as a result of the restraints in order to be entitled to relief. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). A defendant who was improperly restrained is not prejudiced if the jury was unable to see the restraints. *Id.*

In this case, during trial, defendant had a "leg brace" on one leg and a "Taser strapped to the other leg." Even assuming that these restraints were improper, defendant would not be entitled to relief because there is no indication that the jury saw these security measures. To the contrary, the defense table was skirted with cloth and, in denying defendant's motion to set aside the jury verdict, the trial court stated that "[t]he jury never saw or heard [defendant's] feet shackles." It appears that the only time the leg restraints were a concern related to defendant walking to and from the witness stand. To prevent the jury from seeing the restraints during this time, defendant moved to the witness stand, and returned to the defense table, out of the presence of the jury.[3] Cf. *id.* at 187. The trial court also verified that the shackles could be neither seen nor heard from the witness stand. On this record, given that the jury did not see the restraints, defendant was not prejudiced and he is not entitled to relief on appeal. *Id.*

## B. DEPUTY'S LOCATION

As noted, "[e]very defendant has a due process right to a fair trial, which includes the right to be presumed innocent." *Rose*, 289 Mich App at 517. "In certain circumstances, courtroom procedures or arrangements undermine this presumption of innocence because the

---

[3] On appeal, defendant's appellate counsel argues that this procedure shone a figurative "spotlight" on defendant because, when the jury returned to the courtroom, they found defendant on the witness stand being "guarded" by a deputy. To the extent this argument involves a challenge to the procedure of removing the jury from the courtroom, defendant waived any such argument at trial when, during a discussion of defendant's restraints and keeping those restraints from the jury's view, defense counsel stated that he was "satisfied with the efforts to preclude from jury view any indication that [defendant was] in custody." See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) ("When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver."). Although the issue has been waived, we will consider it *infra* insofar as defendant challenges his counsel's effectiveness in agreeing to these procedures. See *People v Harmon*, 248 Mich App 522, 530; 640 NW2d 314 (2001).

procedure or arrangement is deemed inherently prejudicial." *People v Johnson*, 315 Mich App 163, 179; 889 NW2d 513 (2016). If a practice is found to be inherently prejudicial, it may only be permitted "where justified by an essential state interest specific to each trial." *Holbrook v Flynn*, 475 US 560, 568-569; 106 S Ct 1340; 89 L Ed 2d 525 (1986).

With regard to the use of security guards in a courtroom, the United States Supreme Court has determined that there is no presumption that the use of identifiable security guards is inherently prejudicial. *Id.* at 569. However, the Court in *Holbrook* recognized that it is "possible" that security in the courtroom "might under certain conditions create the impression in the minds of the jury that the defendant is dangerous or untrustworthy." *Id.* (citation and quotation marks omitted). For this reason, the Court adopted a case-by-case approach regarding the use of security guards in a courtroom. *Id.*

Specifically, in each case, courts must first "look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial." *Id.* at 572. "Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience." *Estelle v Williams*, 425 US 501, 504; 96 S Ct 1691; 48 L Ed 2d 126 (1976). The question to be decided is "whether an unacceptable risk is presented of impermissible factors coming into play." *Holbrook*, 475 US at 570 (citation and quotation marks omitted). In deciding this issue, we consider whether the procedure at issue brands a defendant "with an unmistakable mark of guilt" or whether there is a wider range of inferences that may be drawn. *Id.* at 569-571. See also *Rose*, 289 Mich App at 517-518. If the challenged practice is not found to be inherently prejudicial, the defendant must make a showing of "actual prejudice," and "if the defendant fails to show actual prejudice, the inquiry is over." *Holbrook*, 475 US at 572.

In this case, defendant challenges the presence and location of a deputy while defendant was testifying.[4] Specifically, defendant argues that the "inherent and actual prejudice lies in the fact that the deputy that stood behind [defendant] during his testimony was not standing behind [co-defendant] when he testified." As noted, we remanded this case for an evidentiary hearing regarding the deputy's location during trial, as a result of which the trial court made several factual findings that are key to resolution of this issue. Specifically, the trial court found that:

1. The deputy was in full uniform, with weapon, and was fully attired with other items such as handcuffs and other department assigned gear.

2. While defendant testified, the deputy was somewhere between 112 and 130 inches from the Defendant. The witnesses, but for defendant, put the deputy 130

---

[4] Defendant also asserts in passing that the deputy "escorted" defendant back to the defense table after defendant's testimony. However, as we have discussed, the record indicates that defendant moved to and from the witness stand outside of the jury's presence. Consequently, even if the deputy escorted defendant to or from the stand, defendant cannot have suffered prejudice because such activities were not seen by the jury. See *Payne*, 285 Mich App at 186.

inches . . . (by tape measure) away from Defendant. The deputy was not directly behind defendant; rather the [deputy] was to the side of Defendant.

3. The deputy, while Defendant testified, was impassive, non-reactive, did not alter his position, and never came close to defendant while testifying . . . .

4. While defendant and co-defendant were at counsel table, the deputy (not necessarily the same one) was probably closer to the on-bond co-defendant . . . .

5. There was a distinction in treatment by the deputy between defendant and his co-defendant, but only when Defendant testified. No difference in treatment was visible when at counsel table . . . .

6. The distinction in treatment by the deputy, when Defendant testified, would have been noticeable by the jury as the deputy was closer to some jurors than he was to defendant.

7. By the accounts of the witnesses, there was nothing done by the deputy, other than relocating, that would have indicated that deputy was "guarding" defendant while he testified. And even in his place of relocation, the deputy did nothing to indicate he was taking extra precautions.

Additionally, the trial court noted that, while defendant testified, another deputy remained "behind the co-defendant . . . just as he had previously done when [defendant] was at the table."

Looking at the scene presented to the jury, we conclude that the courtroom procedures in this case were not inherently prejudicial. The facts as found by the trial court demonstrate that a deputy stood a respectful distance—112 to 130 inches, i.e., more than 9 feet to almost 11 feet—away from defendant while he testified. There was only *one* deputy near defendant during this time. Cf. *People v Stevens*, 47 Cal 4th 625, 640; 218 P3d 272 (2009) ("Although defendant argues the jury may have viewed him as dangerous, this possibility is undercut by the fact that he was monitored by a single deputy."). The deputy stood to the side of defendant, not directly behind him, and the deputy stayed in the same location for all of defendant's testimony. The deputy did nothing to indicate that he was taking extra precautions, and there was certainly no show of force or use of weaponry. Further, the deputy did nothing that could be seen to distract from, or appear to comment on, defendant's testimony. See *id.* at 639. To the contrary, the deputy was described as "impassive" and "non-reactive." Cf. *State v Butler*, 198 Wash App 484, 494; 394 P3d 424 (2017) (finding an officer's presence "innocuous" when he was "quiet, relaxed and not particularly close" to the defendant). In other words, nothing in the number of guards, the guard's behavior or weaponry, or the guard's distance from defendant suggested any "particular official concern or alarm." See *Holbrook*, 475 US at 569. Further, this procedure lasted only for the duration of defendant's testimony, meaning that the deputy's location near defendant while he was testifying was neither "a constant reminder" of defendant's status nor "a continuing influence throughout the trial." See *Estelle*, 425 at 504-505.

In these circumstances, applying reason, principle, and common human experience, we conclude that the location of the deputy during defendant's testimony did not present an unacceptable risk of impermissible factors coming into play. See *Holbrook*, 475 US at 569-571.

"Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm." *Id.* at 569. Such is the case here. We simply cannot believe that the presence of one impassive deputy 10 feet away from defendant while defendant testified unmistakably marked defendant with a sign of guilt. *Id.* at 571. Indeed, numerous courts have likewise concluded that a deputy's or officer's location near the witness stand during a defendant's testimony is not inherently prejudicial. Cf. *United States v Williams*, 897 F2d 1430, 1434 (CA 8 1990); *Stevens*, 47 Cal 4th at 639-640; *People v Peeples*, 205 Ill 2d 480, 530; 793 NE2d 641 (2002).

In contrast, defendant contends that, even if such practices do not normally evince inherent prejudice, his case is unique because co-defendant was not similarly guarded when co-defendant testified and this discrepancy constitutes inherent prejudice. As we have discussed, we are not persuaded that the deputy's location 10 feet away from defendant reasonably gives rise to the inference that defendant was being "guarded," particularly when the guard appeared impassive and took no additional precautions. In these circumstances, even if the jurors noted the contrasting lack of a deputy during co-defendant's testimony, it is highly unlikely that they would have reached the conclusion that defendant was dangerous or untrustworthy. Moreover, any jurors paying attention to the deputies in the courtroom would have noticed other deputies in the courtroom, none of whom showed any particular interest in defendant. Most notably, during the time that defendant and co-defendant sat at counsel's table, a deputy was as close, if not closer to, co-defendant, which belies defendant's claim that the courtroom procedures resulted in a more positive impression of co-defendant. Likewise, when defendant testified, a deputy remained near co-defendant at counsel's table, again undercutting defendant's claim that co-defendant appeared harmless in comparison to defendant. Overall, there are a wide range of inferences that may be drawn from the presence of guards in a courtroom, *Holbrook*, 475 US at 569; and, in this case, we cannot conclude that the location of a single deputy during defendant's testimony was inherently prejudicial.

With regard to actual prejudice, defendant has not met his burden of showing actual prejudice arising from the deputy's location while he testified. There is no evidence that the jurors were actually influenced by the deputy's location or that any jurors even actually noticed a distinction in the deputy's location during defendant and co-defendant's respective testimony. See *Hayes v Ayers*, 632 F3d 500, 522 (CA 9 2011); *United States v Waldon*, 206 F3d 597, 608 (CA 6 2000); *United States v Elder*, 90 F3d 1110, 1131 (CA 6 1996). Moreover, the jury was repeatedly instructed on the presumption of innocence and their duty to decide the case based on the evidence. Jurors are presumed to follow their instructions. *Johnson*, 315 Mich App at 192.

Nevertheless, defendant argues that actual prejudice has been shown because defendant was convicted and co-defendant was found not guilty. This different outcome is not evidence that the jury was actually influenced by the deputy's location. Just as there is no evidence the jury found defendant guilty based on the deputy's location, there is likewise no evidence that the jury found co-defendant not guilty because he testified without a deputy in a 10 foot radius of the witness stand. Quite simply, it is "impossible to know exactly why" the jury found co-defendant not guilty. *United States v Watts*, 519 US 148, 155; 117 S Ct 633; 136 L Ed 2d 554 (1997). We will not assume that the jury found co-defendant not guilty based on the location of the deputy,

and we see no basis for concluding that the deputy's location influenced the jury's verdict.[5] Thus, defendant has not shown actual prejudice, and he is not entitled to relief.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant also argues that counsel provided ineffective assistance by failing to object to the various courtroom procedures and, in particular, by agreeing to have the jury exit the courtroom while defendant went to and from the witness stand. We disagree.

"Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). Prejudice is "shown by proving that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (citation and quotation marks omitted).

As we have discussed, the use of leg restraints in this case did not prejudice defendant because they were not seen by the jury. *Payne*, 285 Mich App at 186. Absent a showing of prejudice, defendant cannot establish that counsel provided ineffective assistance by not objecting to the restrains. *Heft*, 299 Mich App at 80-81. Likewise, defendant has not shown a reasonable probability that the location of the deputy while defendant testified affected the outcome of the proceedings. Thus, his ineffective assistance claim is without merit. *Id.*

---

[5] In arguing to the contrary, defendant overstates the differences between co-defendant and defendant in terms of being "guarded." Both of them had a deputy near them at counsel's table and a deputy remained close to co-defendant at the table while defendant testified. Defendant's argument also presupposes that the only difference between defendant and co-defendant at trial was the location of the deputy during their respective testimony. In actuality, there was also a substantial difference in their alibis. Specifically, defendant testified that he was home all day with a girlfriend, but he did not produce his girlfriend as a corroborating witness for his alibi and there were inconsistencies in his alibi defense insofar as he filed a notice of intent listing a different address than the address he provided at trial. In contrast, co-defendant testified that, at the time of the home invasion, he was moving to a new apartment. A neutral witness—a neighbor with no apparent association with co-defendant—confirmed that she saw co-defendant and another man unloading several carloads of items and that, during that time, co-defendant borrowed a screwdriver from her. She provided dates, times, and details of co-defendant's activities. In short, it appears that co-defendant presented a substantially stronger alibi defense. In sum, defendant and co-defendant differed in more than just the location of the deputy while they testified, and there is no indication that the deputy's location affected the jury's verdict. Thus, defendant has failed to show actual prejudice.

We also find no merit to defendant's contention that counsel provided ineffective assistance by agreeing to the procedure by which defendant went to and from the witness stand outside of the jury's presence such that defendant was seated in the witness stand, with a guard nearby, when the jury returned to the courtroom. First, agreeing to such a procedure did not fall below an objective level of reasonableness. To the contrary, the practice prevented the jury from seeing defendant's leg restraints; and, given the prejudicial effect of such restraints, counsel had sound reasons for agreeing to this course of action. See *Payne*, 285 Mich App at 186-187. Second, defendant has not shown prejudice. As discussed, the facts do not support defendant's claim that he was under "guard" while on the witness stand. Further, even if the jury thought it odd to find defendant on the witness stand when they returned to the courtroom, there are certainly more innocuous conclusions to be drawn, such as the possibility that some discussions or proceedings took place outside their presence. Overall, we fail to see how this procedure, which prevented the jury from seeing defendant's restrains, can be categorized as prejudicial. Defendant has not shown prejudice, and he has not established his ineffective assistance of counsel claim.

## III. CONSECUTIVE SENTENCING

Finally, defendant argues that the trial court abused its discretion by imposing his home invasion sentence as a consecutive sentence. Defendant asserts that the trial court failed to provide any reasons why consecutive sentencing was warranted, and defendant questions whether the trial court was aware that consecutive sentencing is discretionary as opposed to mandatory. According to defendant, the facts of this case did not merit consecutive sentencing.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (citation and quotation marks omitted). MCL 750.110a(8) provides that a "court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." When a statute grants a court discretion to impose a consecutive sentence, the court's decision to do so is reviewed for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). "Review of a discretionary decision requires that the trial set forth the reasons underlying its decision." *Id.* at 664.

In this case, the trial court imposed a consecutive sentence for defendant's home invasion conviction without explaining the reasons underlying that decision. In the absence of particularized reasons for consecutive sentencing, remand is necessary so that the trial court can fully articulate the rationale for imposing a consecutive sentence. *Id.* at 666.

Defendant's convictions are affirmed, but the case is remanded for further proceedings regarding consecutive sentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra

-10-