# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74144-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IVORY TYQUAN BUTLER, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 3, 2017 |
| | ) | |

VERELLEN, C.J. — The State charged Ivory Tyquan Butler with promoting commercial sexual abuse of a minor. Months before trial, the State provided the defense with business records and a certification from the records custodian. Although the State did not give the required written notice of its intent to rely on the preauthentication provisions of RCW 10.96.030, Butler had a fair opportunity to challenge the business records. Therefore, Butler was not prejudiced by the lack of written notice. Alternatively, any error was harmless in view of the overwhelming evidence of Butler's commercial sexual exploitation of a 14-year-old girl.

The presence of a second jail officer in the courtroom during a portion of the victim's testimony did not deprive Butler of his right to a fair trial. The second officer was not conspicuously close to Butler, did not obstruct Butler's view of the witness, did not attract attention, and was not present for the remainder of the victim's testimony.

Additionally, the trial court instructed the jury about a routine change in security personnel.

We affirm.

FACTS

N.C. was 14 years old when she first met 22-year-old Ivory Butler. N.C. skipped school and spent the day with Butler. N.C.'s mother found out she had skipped school and punished her.

N.C. ran away from home, and Butler picked her up. He took her to a motel room and arranged for her to meet men at the motel for sex. She gave the money she received to Butler.

Text messages to and from N.C. on Butler's cellphone describe their relationship and discuss N.C. selling sexual services and giving the payments to Butler. After his arrest, Butler admitted the phone was his and that he had the phone in his possession the day police found N.C. at the motel. N.C. also testified that she had memorized that same phone number as Butler's number. Recordings of Butler's jail phone calls established that he called his own phone number from jail several times. After failed attempts, someone did answer, and Butler asked, "Why haven't you been [answering] my phone?"[1] And the individual he spoke to referred to the phone as "your phone."[2]

Detective Raymond Unsworth found Internet ads on Backpage.com for female escort services with Butler's phone number listed as the contact number. The ads included photographs of the body, but not the face, of a young woman. The ads alluded

---

[1] RP (Aug. 26, 2015) at 822.
[2] Id. at 821-26.

2

to sexual services that would be provided, with the prices that would be charged. When Detective Unsworth showed the photos in the ads to N.C.'s mother; she recognized N.C.

An undercover detective responded to the Backpage ads by contacting Butler's phone number. The detective, posing as a customer, arranged to obtain sexual services for $300 from a woman in room 201 of the New Horizon Motel. Police found N.C. in that room, together with a disposable cellphone under the mattress, condoms in a Crown Royal bag, and a knife in the bedside table drawer. N.C. testified that Butler provided these items for her use. In Butler's phone, the contact name assigned to the disposable phone found in the motel room was "Money Baby Money Baby."[3] Text messages between Butler's phone and the disposable phone found in the motel room included details about providing sexual services for money.[4] The messages also included instructions from Butler to N.C. to discard the phone in the toilet if the police came.

Butler was arrested and charged under RCW 9.68A.101 with promoting commercial sexual abuse of a minor.

At trial, the State sought to admit three exhibits that are at issue on appeal. Exhibits 3 and 4 relate to Backpage ads for escort services. Exhibit 5 is the certification from the Backpage records custodian.

---

[3] RP (Aug. 20, 2015) at 617.

[4] Id. at 619-25; see id. at 621-22 (Detective Maurice Washington testified, "That is the—a conversation between the pimp and trafficker and the person being exploited talking about a date that's on a—that's coming to arrive and letting them know how much money they are to receive for their services.").

Detective Unsworth testified that he found the ads on Backpage's public website. Each ad included photographs of a young woman, information about the sexual services that could be provided, the price, and Butler's telephone number as the contact. Exhibits 3 and 4 compiled the ads that were online, more photographs that Detective Unsworth had not seen online, the date each ad was posted, and the poster's fictitious name, mailing address, and e-mail address. Backpage provided the certification from its records custodian in response to a search warrant for business records. The State provided these exhibits to Butler months before trial as part of discovery. The trial court admitted the exhibits over Butler's objection.

During trial, Butler was in custody and a jail officer was present in the courtroom. When N.C. concluded her testimony, Butler moved for a mistrial, arguing that during a portion of N.C.'s testimony, an additional jail officer was present and "was shielding the witness from [Butler]" and the officer made "it obvious to the jurors."[5] The court described the event:

> Very little that happened with the second officer entering the courtroom the Court believes created any sort of alarm for dangerousness by the defendant or even particular tension in the courtroom, and the Court treated it as though it were routine. The defense didn't raise a motion to alert the Court to any prejudice or possible prejudice that they believe it produced. The officer was unobtrusive. He sat directly in front of the witness stand but some 20 feet away. He was eight feet away from the defendant—I would say that's a fair estimate—and six from the defense counsel. He was in a position to prevent any harm, but he also was not obtrusive. No weapon was displayed. There was no fidgetiness. There was nothing to suggest that this was anything other than just another security measure.[6]

___

[5] RP (Aug. 20, 2015) at 694.

[6] RP (Aug. 26, 2015) at 715-16. A diagram of the courtroom places the second officer in the front row of the gallery. Clerk's Papers (CP) at 29.

The court also noted that there was not a second officer present when N.C. testified the next morning. The court denied Butler's motion. Jail staff subsequently informed both counsel and the court that the additional officer appeared because of a routine change in personnel. The trial court gave a limiting instruction conveying that information:

> Security staff in the courtroom has not been deliberately heightened at any time during this trial. Additional security staff may have appeared because of a routine change in personnel. The jury should not make any assumptions or draw any conclusions based upon the presence of security staff.[7]

The jury found Butler guilty as charged, and the trial court imposed a standard range sentence.

Butler appeals.

## ANALYSIS

### I. Evidentiary Objection

Butler argues Exhibits 3, 4, and 5 were inadmissible because the State did not give proper notice under RCW 10.96.030. RCW 10.96.030(3) contains an exception to the general rule requiring witness testimony to admit business records. To ensure the opposing party has a fair opportunity to challenge the business records and certification, the statute provides in part:

> A party intending to offer a record into evidence under this section must provide written notice of that intention to all adverse parties, and must make the record and affidavit, declaration, or certification available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them. A motion opposing admission in evidence of the record shall be made and determined by the court before trial and with sufficient time to allow the party offering the record time, if the motion is granted, to produce the

---

[7] CP at 48.

5

custodian of the record or other qualified person at trial, without creating hardship on the party or on the custodian or other qualified person.[8]

We review the admission of evidence for abuse of discretion.[9] "When a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons, an abuse of discretion exists."[10]

There are no cases addressing lack of notice under RCW 10.96.030(3),[11] but both parties point to cases addressing a similar notice requirement in the child hearsay statute:

> A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his or her intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.[12]

Cases addressing the child hearsay statute have upheld the admission of statements without prior notice "so long as the adverse party had or was offered an opportunity to prepare to challenge the statements."[13] The cases have also focused on

---

[8] RCW 10.96.030(3).

[9] State v. Ralph G., 90 Wn. App. 16, 22, 950 P.2d 971 (1998).

[10] State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

[11] The only case law regarding RCW 10.96.030 addresses section (2), not the notice requirement at issue here, section (3). State v. Lee, 159 Wn. App. 795, 817, 247 P.3d 247 P.3d 470 (2011).

[12] RCW 9A.44.120.

[13] State v. Hughes, 56 Wn. App. 172, 175, 783 P.2d 99 (1989) (citing United States v. Brown, 770 F.2d 766 (9th Cir. 1987)); see also State v. Lopez, 95 Wn. App. 842, 851, 980 P.2d 224 (1999) ("The notice requirement is derived from the 'catch-all' hearsay exception under Federal Rule of Evidence 803(24). This federal rule has been interpreted as requiring sufficient notice to provide the adverse party with a fair opportunity to prepare to challenge the admissibility of the statement.") (citing Hughes, 56 Wn. App. at 174).

the requirement of prejudice and acknowledged that the availability of a continuance satisfies the statute.[14]

As clarified at oral argument, Butler contends the State was required to provide a separate written notice to inform him that it intended to rely on RCW 10.96.030 for admission of the business records. But months before trial, the State provided the certification of the Backpage records custodian, together with the Backpage business records. Mid-trial, the State also offered to produce the custodian for live testimony and a defense interview. This allowed Butler ample opportunity to prepare to challenge the records. Butler's trial counsel even mentioned that his review of the case law was not helpful to support suppression of the exhibits, and he declined to ask for a continuance.[15]

Consistent with the cases addressing the child hearsay statute, we conclude the lack of written notice required by RCW 10.96.030 did not cause any prejudice to Butler. He had ample opportunity to prepare to challenge the business records when the State provided all of the proposed business records and the certification from the records custodian months prior to trial. The State offered to call the records custodian as a witness and to allow Butler to interview the custodian. And Butler declined to request a continuance. The lack of written notice did not cause any prejudice.

---

[14] Hughes, 56 Wn. App. at 175; Brown, 770 F.2d at 771.

[15] RP (Aug. 19, 2015) at 474 ("I have not asked for a continuance to address that issue, so.").

Alternatively, any error was harmless. The admission of evidence is "harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole."[16]

Butler contends the Backpage ads bolstered N.C.'s testimony tying Butler to the Backpage evidence. But even without the admission of the Backpage ads, overwhelming evidence links Butler to his exploitation of N.C. The physical evidence, text messages, jail phone calls, testimony from N.C., and successful undercover sting operation provide overwhelming evidence that Butler promoted the prostitution of N.C.

We conclude the lack of written notice required by RCW 10.96.030 did not cause prejudice to Butler. Alternatively, any error in admission of the business records themselves was harmless because overwhelming evidence supports Butler's guilt.

## II. Second Officer During N.C.'s Testimony

Butler argues the presence of a second jail officer during a portion of N.C.'s testimony deprived him of his right to a fair trial.

A defendant has the fundamental right to a fair trial.[17] The right to a fair trial includes the right to be presumed innocent. "'The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.'"[18]

---

[16] Thomas, 150 Wn.2d at 871 (quoting Bourgeois, 133 Wn.2d at 403).

[17] U.S. CONST. amends. VI and XIV; WASH. CONST. art. I, § 22.

[18] Estelle v. Williams, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976) (quoting Coffin v. United States, 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481 (1895)).

8

Courts closely scrutinize practices that may threaten the fairness of the trial.[19] When courtroom arrangements inherently prejudice the fact-finding process, it violates due process unless the arrangements are required by an essential state interest.[20] An arrangement is inherently prejudicial if it creates an unacceptable risk of impermissible factors influencing the jury's verdict.[21] We evaluate the likely effects of a particular procedure based on "reason, principle, and common human experience."[22]

Butler relies on Holbrook v. Flynn,[23] and argues the particular arrangement of the jail officers and how that might be viewed by the average juror was inherently prejudicial.[24] But in Holbrook, the United States Supreme Court "counsel[ed] against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial," and found that "[i]n view of the variety of ways in which such guards can be deployed, we believe that a case-by-case approach is more appropriate."[25]

Here, the jail officer was quiet, relaxed, and not particularly close to Butler. The officer did not block Butler's view of the witness, and any juror who was paying attention to the officers also would have noticed that there was only one officer during the

---

[19] Id. at 504; Holbrook v. Flynn, 475 U.S. 560, 568, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986).

[20] Holbrook, 475 U.S. at 568-72.

[21] Estelle, 425 U.S. at 504-05; Holbrook, 475 U.S. at 570.

[22] Estelle, 425 U.S. at 504.

[23] 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)

[24] Butler cites State v. Jaime, 168 Wn.2d 857, 233 P.3d 554 (2010), where our Supreme Court held that a jury trial in a jailhouse courtroom was inherently prejudicial and infringed on the defendant's right to a fair trial. "Because the courtroom setting itself is essential to a trial's integrity, we should be wary of a setting that impermissibly influences a jury's decision-making process and jeopardizes the presumption of innocence." Jaime, 168 Wn.2d at 862.

[25] Holbrook, 475 U.S. at 569.

remainder of N.C.'s testimony the next day. And the court's instruction about a routine shift change remedied any potential juror confusion or concern with the presence of a second security officer.

We conclude the second officer's presence in the courtroom during a portion of N.C.'s testimony was innocuous.

### III. Appellate Costs

Butler asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party.[26] However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[27] Here, Butler was found indigent by the trial court. If the State has evidence indicating that Butler's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Affirmed.

WE CONCUR:

---

[26] RAP 14.2.

[27] Id.