# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50064-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SHAUN CHRISTINE JOHNSON, | |
| Appellant. | |

MAXA, C.J. – Shaun Johnson appeals her conviction of vehicular assault that arose from an accident in which her car went off the road and struck a pedestrian. The jury was instructed that to convict Johnson of vehicular assault they had to find that she was under the influence of any drug.

We hold that (1) the trial court did not err in denying her motion to suppress evidence related to her admission that she used methamphetamine despite a prior illegal search of her purse that revealed methamphetamine, (2) the trial court did not err in admitting opinion testimony (a) from a drug recognition expert (DRE) that Johnson was impaired by something other than pain medicine and (b) from a lay witness that Johnson's behavior was similar to the behavior of people she had seen who were under the influence of methamphetamine, (3) the trial court did not violate her confrontation rights by allowing the officer to testify about hearsay statements made by hospital staff about Johnson's pain medication, (4) the trial court's admission of certain testimony was not an improper judicial comment on the evidence, (5) the

information was not deficient and the trial court did not err in its to-convict jury instruction even though neither identified the defendant's negligence as an element of vehicular assault, (6) the trial court did not err in rejecting a proposed jury instruction on DRE protocol, (7) Johnson's claim that prosecutor committed misconduct by introducing improper evidence and misstating the burden of proof in closing argument fails, and (8) defense counsel did not engage in ineffective assistance of counsel by not objecting to the alleged prosecutorial misconduct.

Accordingly, we affirm Johnson's conviction of vehicular assault.

## FACTS

*Accident*

In June 2013, Johnson drove off a road in Battle Ground and into a ditch. Johnson was injured in the accident.

One of the first people to come upon the accident scene was Karin Nelson. Nelson stayed with Johnson and kept her talking until paramedics arrived. Nelson thought Johnson was acting fidgety and paranoid. Johnson kept saying that she could not find her phone or her pot. Nelson previously had used methamphetamine and had observed others who were using methamphetamine. Nelson believed that Johnson was high and that Johnson's behavior was similar to the behavior of people she had seen who were under the influence of methamphetamine.

Deputy Tim Gosch arrived at the scene. Johnson's arm seemed to be broken and she was transported to the hospital. Gosch searched Johnson's purse to retrieve her driver's license and proof of insurance from her purse. He discovered baggies that contained suspected methamphetamine.

Later, a tow truck operator discovered 16-year-old Justin Carey in dense vegetation adjacent to the ditch. Carey had been waiting at a school bus stop and Johnson's car struck Carey as it left the road. Carey suffered serious injuries to both of his legs and ultimately one of his legs had to be amputated as a result of the accident.

*Assessment of Johnson for Impairment*

A DRE, Deputy Chris Luque, was called to assess Johnson at the hospital. Gosch briefed Luque on what he knew from the accident scene, including that he had discovered methamphetamine in Johnson's purse. Luque saw Johnson approximately three hours after the accident. The hospital staff told Luque that Johnson had been administered Fentanyl and Dilaudid intravenously only a few minutes before he arrived.

Luque conducted a few steps of the standard DRE exam. He performed a horizontal gaze nystagmus (HGN) test, checked Johnson's pupil dilation, took her pulse, and checked her blood pressure on the vitals monitor. Luque found that Johnson did not have any nystagmus, but that her pupil dilation and blood pressure were normal and her pulse was elevated. He also noted that she was awake and alert. Luque believed that these results were unexpected because Johnson had just been given heavy narcotic medication. He expected her pupils to be constricted, her pulse and blood pressure to be down, and for Johnson to be groggy or sleepy.

Luque questioned Johnson after reading her the *Miranda*[1] warnings and receiving her consent. Johnson told Luque that she had used methamphetamine and marijuana two days before the accident. However, she denied using any drugs within 24 hours of the accident.

Luque applied for a search warrant for Johnson's blood to test for drugs. His search warrant affidavit stated that Gosch had found methamphetamine in Johnson's purse and that

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Johnson admitted using methamphetamine and marijuana two days before the accident. The affidavit also stated that Luque expected Johnson's vital signs to be low and for her to have difficulty staying awake based on the amount of narcotics she had been given. A district court judge issued the warrant.

Pursuant to the warrant, Johnson's blood was drawn later that day. Johnson's blood tested positive for methamphetamine.

*First Trial and Appeal*

The State charged Johnson with vehicular assault and possession of a controlled substance – methamphetamine. The amended information did not allege negligence as an element of vehicular assault. After her first trial, Johnson was convicted of both offenses.

On appeal, Division One of this court reversed the convictions based on a holding that Gosch's warrantless search of Johnson's purse was illegal. *State v. Johnson*, 75038-1-I (Wash. Ct. App. Jul. 18, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/750381.pdf. The court remanded for a new trial.[2] *Id.*

*Suppression Motion*

On remand, Johnson filed a motion to suppress any testimony by Luque and Nelson that she was impaired or under the influence of methamphetamine and to suppress any testimony that her blood test showed the presence of methamphetamine. The trial court held a hearing on the motion.

Luque testified at the hearing that he was a DRE with hundreds of hours of experience over many years. He stated that he had been trained to identify when people were under the influence of different categories of drugs. Luque testified about his examination of Johnson and

---

[2] On remand, the trial court apparently dismissed the possession charge.

his findings as discussed above. He acknowledged that he did not perform the entire 12-step DRE protocol. However, he believed based on his examination and observations that there was probable cause to suspect that Johnson was under the influence of some kind of drug.

Luque testified that he questioned Johnson about drug use and she told him that she had used methamphetamine two days earlier. Gosch had told Luque that he found methamphetamine in Johnson's purse. But Luque stated that he would have asked Johnson about illicit drug use even if he had not known about the methamphetamine in her purse.

The trial court issued written findings of fact and conclusions of law. The court found that Luque believed Johnson "was experiencing antagonistic effects of two or more different types of drugs . . . and suspected that she was under the influence of one or more drugs, other than the pain medications." Clerk's Papers at 165. The trial court ruled that Johnson's statements to Luque in the hospital were admissible and that the search warrant for Johnson's blood draw was supported by probable cause. Therefore, the court denied Johnson's suppression motion.

*Trial*

At trial, Gosch testified about his investigation of the accident. But he did not testify about his discovery of methamphetamine in Johnson's purse or about Johnson's admission to him that she had used methamphetamine.

Nelson testified that based on her own use of methamphetamine and her experience with people using methamphetamine, she believed that Johnson was high and that Johnson's behavior was similar to the behavior of people she had seen who were under the influence of methamphetamine.

Luque testified that the hospital staff told him Johnson had been administered narcotic medications a few minutes before he arrived at the hospital. Johnson objected that Luque was using a transcript of a prior proceeding to refresh his recollection when Luque could not recall what he had said in that proceeding. The court overruled the objection. Johnson did not object to the statements made by the hospital staff as hearsay.

Luque also testified that, based on his experience and observations, Johnson was under the influence of both a stimulant and the medical doses of narcotics given by the hospital staff. Luque testified that he applied for a search warrant because he believed that she was "impaired under something else besides the narcotic analgesics that were administered by the hospital staff." Report of Proceedings (RP) at 576.

Defense counsel asked Luque whether he had presented the search warrant affidavit to a judge in person or over the phone. Defense counsel also asked whether Johnson had consented to a blood draw, to which Luque testified that Johnson was cooperative and would have willingly provided her blood. The State then elicited testimony from Luque that accepting a suspect or witness's consent to take a blood draw was possible but subject to legal challenge. He stated that obtaining a search warrant was safer because it gets approved by a judge.

Carey's mother, Janette Chumley, testified that Carey now had a prosthetic leg. She testified that his prosthetic should be replaced every two years but that his insurance would not pay for it. Chumley testified over Johnson's relevance objection that it would cost them $90,000 to replace Carey's prosthetic leg.

Johnson proposed a jury instruction that listed all 12 steps of the DRE protocol, stated that the DRE must base his or her conclusions on the totality of the evaluation, and stated that if

6

in doubt the DRE must find that the driver is not under the influence. The trial court did not accept this proposed instruction.

The court instructed the jury that to convict a defendant of vehicular assault it must find beyond a reasonable doubt that (1) Johnson drove the vehicle, (2) Johnson's driving proximately caused substantial bodily harm to another person, (3) Johnson was under the influence of any drug, and (4) that the accident occurred in Washington. Johnson did not propose a to-convict instruction that included negligence as an element of vehicular assault.

In closing argument, the prosecutor stated that the court proceeding was because of the actions and choices of the defendant. Johnson's trial counsel moved for a mistrial on the basis that the prosecutor's statement misstated the law and shifted the burden of proof onto the defendant. The trial court denied the motion.

The jury found Johnson guilty of vehicular assault. Johnson appeals her conviction.

## ANALYSIS

A.      SUPPRESSION MOTION

Johnson argues that the trial court erred in denying her suppression motion regarding Luque's testimony that she was impaired or under the influence of methamphetamine and regarding evidence that her blood test showed the presence of methamphetamine. She argues that her admission to Luque that she used methamphetamine was tainted by the illegal search of her purse, and that without her admission or the methamphetamine in her purse there was not probable cause to support the search warrant for her blood test. We disagree.

1.    Findings of Fact

Initially, Johnson challenges several of the trial court's findings of fact from the suppression hearing. She argues that these findings are not supported by substantial evidence.

We review whether the trial court's written findings are supported by substantial evidence. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). Evidence is substantial if it is enough to persuade a fair-minded person of the truth of the stated premise. *Id.* We do not weigh conflicting evidence. *State v. Boyer*, 200 Wn. App. 7, 13, 401 P.3d 396 (2017). Unchallenged findings are treated as verities on appeal. *State v. Betancourth*, 190 Wn.2d 357, 363, 413 P.3d 566 (2018).

Here, Johnson challenges findings of fact 24, 26, 28, 29, 30, and 31. However, our review of the record shows that each of these findings is plainly supported by evidence in the record. Johnson merely argues that there was some evidence that contradicted the trial court's findings and that the record also could have supported slightly different findings. We hold that substantial evidence supports these findings.

2. Evidence Untainted by Illegal Search

As a general rule, evidence obtained through an illegal search must be suppressed. *Betancourth*, 190 Wn.2d at 364. The exclusionary rule applies to evidence that was seized during an illegal search, and also evidence derived indirectly from an illegal search, the so-called "fruit of the poisonous tree." *Id.*

However, evidence is not automatically excluded simply because it was obtained at some time after the illegal search. "For the exclusionary rule to apply, there must be some proximate casual connection between the misconduct and the evidence." *State v. Mayfield*, No. 95632-4, slip op. at 20 (Wash. Feb. 7, 2019) http://www.courts.wa.gov/opinions/pdf/956324.pdf. The exclusionary rule applies only if the evidence was obtained through exploitation of the illegality. *State v. D.E.D.*, 200 Wn. App. 484, 491, 402 P.3d 851 (2017); *see also State v. Aydelotte*, 35

Wn. App. 125, 131, 665 P.2d 443 (1983) ("Evidence is inadmissible as 'fruit of the poisonous tree' where it has been gathered by exploitation of the original illegality.")

Here, methamphetamine was discovered through Gosch's illegal search of Johnson's purse. Johnson argues that her admission to Luque that she had used methamphetamine was tainted by this unlawful discovery and by Gosch telling Luque about that discovery before Luque spoke with Johnson at the hospital.

However, Luque read Johnson her *Miranda* rights before he asked her about her drug history. Johnson agreed to speak with him. Luque asked Johnson to perform some field sobriety tests as part of his DRE protocol and she agreed to cooperate. There is no evidence that Johnson agreed to cooperate only because she knew that Gosch had found methamphetamine in her purse.

Further, part of Luque's assessment included asking Johnson about her drug history. Johnson stated that she had used methamphetamine two days earlier. Luque specifically stated that he would have asked Johnson about her use of drugs even if Gosch had not told him about the methamphetamine because it was a standard question in a DRE assessment. And Luque did not reference Gosch's search or the methamphetamine found in Johnson's purse. As a result, Luque did not exploit the prior illegal search.

Johnson's admission was not obtained directly or indirectly as a result of the illegal search or through exploitation of that search. Accordingly, we hold that the trial court did not err in denying Johnson's suppression motion with regard to her admission to using methamphetamine.[3]

---

[3] The parties both address the federal attenuation doctrine and whether that doctrine applies under the Washington Constitution. Because we hold that there was no connection at all between the illegal search and Johnson's confession to Luque, we need not address that issue.

### 3. Validity of Search Warrant

#### a. Probable Cause Requirement

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution require probable cause to support the issuance of a search warrant. *State v. Figeroa Martines*, 184 Wn.2d 83, 90, 355 P.3d 1111 (2015) (Fourth Amendment); *State v. Ollivier*, 178 Wn.2d 813, 846, 312 P.3d 1 (2013) (article I, section 7). "Probable cause exists when the affidavit in support of the search warrant 'sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location.' " *Ollivier*, 178 Wn.2d at 846-47 (quoting *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003)). There must be "a nexus between criminal activity and the item to be seized and between that item and the place to be searched." *State v. Neth*, 165 Wn.2d 177, 183, 196 P.3d 658 (2008).

We review de novo a trial court's assessment of probable cause at a suppression hearing, giving deference to the magistrate's determination. *Id.* at 182; *see also State v. Dunn*, 186 Wn. App. 889, 896, 348 P.3d 791 (2015). This court considers only the information contained in the affidavit supporting probable cause. *Neth*, 165 Wn.2d at 182.

A search warrant affidavit must identify specific facts and circumstances from which the magistrate can infer that evidence of the crime will be found at the place to be searched. *See State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

In the context of the exclusionary rule, a search warrant may be valid despite references in the affidavit to illegally obtained information if the affidavit contains otherwise sufficient facts to establish probable cause independent of the illegally obtained information. *Betancourth*, 190

Wn.2d at 369. In assessing probable cause, we must disregard all references to evidence obtained in an illegal search. *Id.* at 368-69.

       b.   Analysis

Here, the search warrant affidavit stated that Gosch had found methamphetamine in Johnson's purse. In evaluating probable cause, we cannot consider that unlawfully obtained evidence. The affidavit also stated that Johnson had admitted that she used methamphetamine and marijuana two days before the accident. As we concluded above, that statement was obtained lawfully and can be used to assess probable cause. In addition, Luque also explained in the affidavit how his observations of Johnson's behavior and vital signs were inconsistent with the fact that she recently had been given narcotic analgesics.

We conclude that even striking all references to Gosch's illegal search of Johnson's purse, the search warrant to draw Johnson's blood was supported by probable cause. Accordingly, we hold that the trial court did not err in ruling that probable cause supported the search warrant and that the trial court did not err in denying Johnson's suppression motion with regard to the blood draw or blood test results.

B.     ADMISSION OF OPINION TESTIMONY

Johnson argues that the trial court erred by admitting opinion testimony from Luque and Nelson that Johnson appeared under the influence of drugs after the accident. We disagree.

     1.   Legal Principles

ER 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Testimony should be admitted under ER 702 when (1) the witness

is qualified as an expert, (2) the expert's opinion is based on a theory generally accepted by the scientific community, and (3) the expert's testimony is helpful to the trier of fact. *State v. Rafay*, 168 Wn. App. 734, 784, 285 P.3d 83 (2012). We review a trial court's decision to admit expert opinion testimony under ER 702 for an abuse of discretion. *State v. Green*, 182 Wn. App. 133, 146, 328 P.3d 988 (2014).

Practical experience may be sufficient to qualify a witness as an expert. *State v. Weaville*, 162 Wn. App. 801, 824, 256 P.3d 426 (2011). Testimony is helpful when it concerns issues outside common knowledge and is not otherwise misleading. *State v. Groth*, 163 Wn. App. 548, 564, 261 P.3d 183 (2011). Courts should interpret helpfulness broadly and in favor of admissibility. *Id.*

A witness not testifying as an expert can offer opinions that are (1) rationally based on the witness's perceptions, (2) helpful to the trier of fact in understanding the witness's testimony or determining a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge covered by ER 702. ER 701; *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). We review for an abuse of discretion a trial court's admission of lay opinion testimony under ER 701. *State v. Blake*, 172 Wn. App. 515, 523, 298 P.3d 769 (2012).

Expert or lay opinion testimony is not objectionable merely because it embraces an ultimate issue of fact. ER 704; *State v. Quaale*, 182 Wn.2d 191, 197, 340 P.3d 213 (2014). However, allowing an otherwise inadmissible opinion that embraces an ultimate issue of fact may be reversible error. *Quaale*, 182 Wn.2d at 199-200.

2. Luque's Expert Opinion

Luque testified that based on his observations Johnson was under the influence of both a stimulant and narcotics given to her by the hospital staff and that he believed that she was

impaired by something else besides the narcotics. Johnson argues that this testimony violated the limitations the Supreme Court has placed on DRE testimony. We disagree.

      a.    DRE Testimony

In *State v. Baity*, the Supreme Court held that a law enforcement officer qualified as a DRE may provide expert testimony that a person's behavior or physical attributes are consistent with the use of certain categories of drugs. 140 Wn.2d 1, 17-18, 991 P.2d 1151 (2000). However, the court stated a DRE witness cannot testify that a defendant exhibited a specific level of intoxication or impairment. *Id.* at 17. And a DRE witness "may not testify in a fashion that casts an aura of scientific certainty" over his or her opinion testimony. *Id.* at 17.

In *Quaale*, the Supreme Court further addressed the appropriate parameters of opinion testimony by a DRE expert witness. 182 Wn.2d at 193-202. In that case, an officer pulled over a driver who was speeding. *Id.* at 194. The officer performed an HGN test and observed that the defendant's eyes bounced and had difficulty tracking the stimulus. *Id.* at 194. The officer did not perform any other sobriety field tests. *Id.* The officer testified at trial that he formed an opinion on whether the defendant was too impaired to operate a motor vehicle based on the HGN test alone. *Id.* at 195. He testified that "[t]here was no doubt he was impaired." *Id.*

The court held that the officer's testimony was inadmissible under *Baity* for two reasons. *Id.* at 198-99. First, the officer "cast his testimony in a way that gave it an aura of scientific certainty." *Id.* at 198. The officer's opinion implied that the HGN test could reveal whether someone was intoxicated and impaired when the test merely showed physical signs consistent with alcohol consumption. *Id* at 198-99.

Second, the officer "testified to a specific level of intoxication when he stated that the defendant was 'impaired.' " *Id.* at 199. The court stated that "the conclusion that the defendant

was impaired rests in the premise that the defendant consumed a sufficient level of intoxicants to be impaired. . . . the testimony implicitly includes a specific level of intoxication: that the alcohol consumed impaired the defendant, which is the legal standard." *Id.* But the HGN test alone does not show specific levels of intoxication. *Id.*

The court in *Quaale* distinguished *City of Seattle v. Heatley*, in which the court held that an officer's testimony that a defendant was "obviously intoxicated" and "affected" by alcohol was admissible. 70 Wn. App. 573, 579-82, 854 P.2d 658 (1993). In that case, the officer did not testify about technical procedures such as HGN tests or pupil dilation. *Id.* at 576. Instead, the officer testified that his opinion was based on his observations and all the tests he gave the defendant taken as a whole. *Id.* The court held that the officer's testimony was admissible as lay testimony because it was based on his experience and observations. *Id.* at 579-80. The court in *Quaale* stated that unlike the officer in *Heatley*, the officer in *Quaale* based his opinion on expert testimony, not lay testimony. *Quaale*, 182 Wn.2d at 201.

### b. Analysis

Here, Luque testified extensively about the DRE protocol process and his experience in conducting DRE exams. He testified that he did not perform the entire 12-step DRE protocol, but that he performed an HGN test and observed Johnson's pupil dilation, heart rate, and blood pressure. Luque also stated that he generally observed Johnson's movements and her responses to questions.

Based on all of his observations and his experience as a DRE, Luque thought Johnson's vital signs and demeanor were inconsistent with what he knew about the effects of the narcotics that the hospital staff had given her. Luque stated that he believed Johnson could be impaired by some drug in addition to the medical doses of narcotics that she had received.

Luque's testimony is distinguishable from the officer's testimony in *Quaale*. First, *Quaale* focused solely on testimony regarding the HGN test. The court in *Quaale* emphasized that the officer's opinion was improper under the admissibility of scientific expert testimony standard discussed in *Baity* because the officer relied upon the HGN test alone and "the HGN test alone cannot reveal specific levels of intoxication." *Quaale*, 182 Wn.2d at 199. But Luque did not rely on the HGN test. Therefore, *Quaale* has limited application here.

Second, unlike the officer in *Quaale*, Luque did not testify in a way that gave his opinion the aura of scientific certainty. He did not express any degree of certainty and did not state that there was no doubt that Johnson was under the influence or impaired. He did not even give an opinion as to what type of drug she may have ingested.

Third, Luque did not expressly state that Johnson's *ability to operate a vehicle* was impaired. In *Quaale*, the officer's objectionable statement came in response to a specific question of whether the defendant's ability to operate a motor vehicle was impaired. *Id.* at 195. In contrast, Luque merely stated that in his opinion Johnson was experiencing an antagonistic effect between an unknown stimulant and narcotics. Luque never gave an opinion on whether that stimulant would have impaired her ability to operate a motor vehicle.

Johnson argues that Luque's testimony was inadmissible because Luque was required to follow all 12 steps of the DRE protocol before forming an opinion and he improperly suggested a level of certainty by stating that his training required him to achieve at least 90 percent accuracy. But Johnson cites no authority for the proposition that a DRE officer must perform all 12 steps of the protocol to testify about his or her observations of a defendant.

We conclude that Luque's expert testimony was admissible and therefore that he did not give an impermissible opinion on Johnson's guilt. Accordingly, we hold that the trial court did not abuse its discretion in admitting Luque's opinion testimony.

3. Nelson Testimony

Nelson testified that she believed that Johnson was high and that Johnson's behavior was similar to other people she had seen under the influence of methamphetamine. Johnson argues that Nelson's testimony constituted an impermissible opinion on guilt because Nelson did not qualify as an expert or lay witness. We disagree.

"A lay witness may express an opinion on another person's intoxication when the witness had the opportunity to observe the affected person." *Quaale*, 182 Wn.2d at 201. *Quaale* addressed alcohol intoxication, not intoxication caused by drugs. *See id.* at 200-01. However, there is no reason to distinguish between lay opinions regarding alcohol intoxication and regarding drug intoxication if the witness has enough experience observing drug intoxication to assist the jury. *See State v. Brett*, 126 Wn.2d 136, 161-62, 892 P.2d 29 (1995) (affirming the admission of a lay opinion that the defendant did not appear to be under the influence of alcohol, drugs, or any other substance based on the witness's prior experience as a police officer); *see also People v. Souva*, 141 P.3d 845, 850 (Colo. App. 2005) (stating that not distinguishing between lay testimony about alcohol intoxication and lay testimony about drug intoxication is supported by a majority of opinions from other states).

As required under ER 701, Nelson's testimony was based on observations she made while she was sitting with Johnson immediately after the accident. In addition, Nelson's testimony was helpful to the jury because of her prior experience with methamphetamine. Nelson testified that she had used methamphetamine and had observed other people who were

under the influence of methamphetamine. And Nelson's testimony was not based on scientific, technical, or other specialized knowledge. Therefore, Nelson's testimony met the three requirements of ER 701. *See Montgomery*, 163 Wn.2d at 591.

Johnson argues that Nelson did not qualify as an expert witness. But the trial court admitted Nelson's testimony as a lay witness under ER 701. And Nelson's opinion was not based on any expertise or specialized medical knowledge, which would have disqualified her as a lay witness under ER 701. *See Montgomery*, 163 Wn.2d at 591. Instead, her opinion was based on her observations in light of her experience.

We conclude that Nelson's testimony was admissible opinion testimony of a lay witness under ER 701 and therefore that Nelson's testimony was not objectionable even though it embraced an ultimate issue of fact. Accordingly, we hold that the trial court did not abuse its discretion in admitting Nelson's testimony.

C.      ADMISSION OF HEARSAY STATEMENTS REGARDING MEDICATION

Johnson argues that the trial court erred by admitting Luque's testimony about hearsay statements from hospital staff regarding the administration of narcotic medication to Johnson, and also that the admission of this testimony violated her confrontation clause rights. We decline to consider this argument.

1.      Failure to Object in Trial Court

Johnson did object to Luque's testimony on hearsay grounds, but only because Luque used a document to refresh his recollection. Johnson did not object based on an argument that the statements themselves were inadmissible hearsay. "A party may assign evidentiary error on appeal only on a specific ground made at trial." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d

125 (2007). Therefore, we hold that Johnson cannot assert her hearsay argument for the first time on appeal.

It also is undisputed that Johnson did not object to Luque's testimony on confrontation clause grounds. However, Johnson argues that she may raise a confrontation clause issue for the first time on appeal under RAP 2.5(a)(3) because it affects a constitutional right.

Division One of this court has held that, unlike other constitutional issues, challenges based on the confrontation clause cannot be raised for the first time on appeal. *State v. Sage*, 1 Wn. App. 2d 685, 701-03, 407 P.3d 359 (2017), *review denied*, 191 Wn.2d 1007, 424 P.3d 1210 (2018) (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)); *State v. O'Cain*, 169 Wn. App. 228, 240, 279 P.3d 926 (2012) (holding the defendant has an "obligation to assert the right to confrontation at or before trial" in order to preserve the error for appeal). However, this court in a footnote declined to follow *O'Cain* and stated that a confrontation clause claim raised for the first time on appeal must be evaluated under RAP 2.5(a)(3), at least until the Washington Supreme Court overrules cases decided before *Melendez-Diaz* dictating that result. *State v. Hart*, 195 Wn. App. 449, 458-59 n.3, 381 P.3d 142 (2016).

We decline to resolve this apparent split in the divisions. Even if RAP 2.5(a)(3) applies, Johnson cannot show that her confrontation clause claim involves manifest error.

2. Manifest Error

Under RAP 2.5(a), this court generally will not review claims raised for the first time on appeal. However, RAP 2.5(a)(3) permits a party to raise such claim if the issue amounts to a "manifest error affecting a constitutional right." To determine whether we consider an unpreserved error under RAP 2.5(a)(3), this court inquires whether (1) the error is truly of a

constitutional magnitude, and (2) the error is manifest. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). A confrontation clause claim is constitutional, so the question here is whether Johnson's claim involves a manifest error.

### 3. Testimonial Hearsay

Under the confrontation clause, a defendant has the right to confront any witnesses testifying against him or her. *State v. Lui*, 179 Wn.2d 457, 470, 315 P.3d 493 (2014). To trigger the confrontation clause, an out-of-court statement must be made by a "witness against" the defendant. *Id.* at 481-82. "If the declarant makes a factual statement to the tribunal, then he or she is a witness. If the witness's statements help to identify or inculpate the defendant, then the witness is a 'witness against' the defendant." *Id.* at 482. Out-of-court testimonial statements must satisfy both requirements to implicate the defendant's confrontation clause rights. *Id.* at 481-82.

The distinction between out-of-court statements that implicate the confrontation clause and those that do not was addressed in *Lui*. 179 Wn.2d at 486-95. In that case, laboratory analysts had conducted forensic tests on DNA, as well as the victim's body. *Id.* at 464-66. However, the laboratory director ultimately testified as an expert witness, relying upon a document summarizing the lab test results. *Id.* at 466. The court held that the lab analysts were not witnesses against the defendant because the raw data from the tests was not adverse to the defendant on its own. *Id.* at 489. "Absent that expert analysis, we are left with an abstract graph or set of numbers that has no bearing on the trial." *Id.* The court added that the purpose of the confrontation clause was effectively served by cross-examining the testifying expert: "Under our test, [the lab director] was the only person involved in [the] testing process who made a

statement of fact that tended to inculpate [the defendant]. Thus [the director] was exactly the right analyst to satisfy the strictures of the confrontation clause." *Id.* at 493.

The court in *Lui* also rejected the argument that the doctor who took temperature readings of the victim's body was a witness against the defendant. *Id.* The court stated that the doctor's data had no relevance until an expert used that data to estimate the range for the time of death. *Id.* "[T]hese points of data could not inculpate [the defendant] without the intervening analysis of an expert." *Id.*

Here, Luque testified that as part of that investigation the hospital staff told him Johnson had been administered Fentanyl and Dilaudid. Luque stated that whether someone had received medication was a fact that a DRE would need to know in conducting a DRE assessment.

This case is similar to *Lui*. 179 Wn.2d at 492-93. Here, the medical information is not meaningful to the jury on its own and, without further analysis from an expert, was not helpful to the State or the defendant. The jury could only make meaning of the fact that Johnson had been given narcotic analgesics, and that fact only inculpated Johnson when it provided the basis of Luque's expert opinion that Johnson was under the influence of something else in addition to the narcotics.

Accordingly, we hold that Johnson's confrontation clause claim is not manifest error because the unknown hospital staff member was not a witness against Johnson for purposes of the confrontation clause. Therefore, we decline to consider that claim.

D.    JUDICIAL COMMENT ON EVIDENCE

Johnson argues that Luque's statement that a judge approved his search warrant implied that a judicial officer agreed with his assessment of Johnson's impairment and was a judicial comment on the evidence. We disagree.

20

Under article IV, section 16 of the Washington Constitution, "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This provision prohibits judges from conveying their personal opinions on the merits of the case to the jury. *State v. Higgins*, 168 Wn. App. 845, 859, 278 P.3d 693 (2012).

> A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement. The touchstone of error in a *trial court's comment* on the evidence is whether the feeling of the *trial court* as to the truth value of the testimony of a witness has been communicated to the jury.

*State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995) (emphasis added) (citation omitted).

Testimony by a witness cannot be an unconstitutional judicial comment on the evidence because the constitution only prohibits the *trial judge* from expressing his or her *personal opinion* on the evidence. *See In re Detention of Pouncy*, 144 Wn. App. 609, 621-22, 184 P.3d 651 (2008) (stating that the admission of a previous court's factual findings was not an unconstitutional comment on the evidence); *see also State v. Redd*, 51 Wn. App. 597, 607, 754 P.2d 1041 (1988).

Here, the State asked Luque whether requesting a search warrant from a judge was a safer procedure than accepting a suspect's consent to take a blood draw. Luque responded "yes." RP at 627. The record does not indicate that the trial court expressed any opinion on Luque's search warrant affidavit or Luque's testimony in general. Accordingly, we hold that Luque's testimony did not constitute a judicial comment on the evidence.

E.    NEGLIGENCE REQUIREMENT FOR VEHICULAR ASSAULT

Johnson argues that the amended information was inadequate and the trial court erred in its to-convict jury instruction because neither included negligence as an element of vehicular assault. We disagree.

RCW 46.61.522(1)(b) states that a person is guilty of vehicular assault if he or she operates any vehicle while under the influence of intoxicating liquor or any drug and causes substantial bodily harm to another. The statute does not expressly state that negligence is an element of the crime.

The State bears the burden of proving each element of a crime beyond a reasonable doubt. *State v. Burch*, 197 Wn. App. 382, 388, 389 P.3d 685 (2016), *review denied*, 188 Wn.2d 1006 (2017). Accordingly, a constitutionally sufficient charging document must include all essential elements of a crime. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). And the trial court's to-convict jury instruction must contain all the elements of the crime essential to conviction. *Burch*, 197 Wn. App. at 388.

Whether a statutory offense includes a mens rea element is a matter of statutory interpretation. *Id.* at 389. We review the relevant statutes de novo to determine if the legislature intended to include a mens rea element in a statutory crime. *Id.* If a statute is silent as to whether mens rea is required, the legislature may have intended for the crime to be a strict liability offense. *See id.* at 393. This court looks to the eight factors adopted in *State v. Bash*, 130 Wn.2d 594, 605-06, 925 P.2d 978 (1996), to determine whether a statute that is silent as to mens rea defines a strict liability offense. *Burch*, 197 Wn. App. at 393.

This court previously considered whether vehicular assault by driving under the influence is a strict liability offense under the *Bash* factors in *Burch*. 197 Wn. App. at 400-07. The court held that the *Bash* factors favored a strict liability interpretation of the particular form of vehicular assault described in RCW 46.61.522(1)(b). *Id.* at 407. Therefore, this court held that the trial court had not erred by excluding ordinary negligence as an element of vehicular assault in its to-convict jury instruction. *Id.*

Here, the amended information and the to-convict instruction did not include negligence as an element of vehicular assault. Johnson argues that negligence *should* be an element of vehicular assault and that *Burch* was wrongly decided. She argues that the *Bash* factors actually weigh in favor of including negligence.

However, Johnson's arguments are unpersuasive. We follow our holding in *Burch* that negligence is not an element of vehicular assault as committed by a driver under the influence of alcohol or drugs. Accordingly, we hold that the information and to-convict instruction properly did not include negligence as an element of vehicular assault.

F.      DRE PROTOCOL INSTRUCTION

Johnson also argues that the trial court erred by rejecting her proposed jury instruction on the DRE protocol. We disagree.

We review a trial court's choice of jury instructions for an abuse of discretion. *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011). Jury instructions are appropriate if they allow a defendant to argue his or her theories of the case, are not misleading, and when read as a whole properly state the applicable law. *State v. Aguirre*, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010). It is not error to refuse to give a specific instruction when a more general instruction adequately explains the law and allows each party to argue its theories of the case. *Hathaway*, 161 Wn. App. at 647.

Here, Johnson's proposed jury instruction stated the protocol for administering a DRE exam and cited *Quaale* and *Baity*. However, those cases dealt with the admissibility of DRE opinion testimony. *Quaale*, 182 Wn.2d at 202; *Baity*, 140 Wn.2d at 18. And once the trial court has ruled on the admissibility of DRE evidence, the jury can properly weigh the DRE witness's testimony.

Johnson argues that the proposed instruction would have allowed her to argue her theory. But Johnson's theory was an erroneous interpretation of the admissibility of DRE opinion testimony. Whether DRE opinion testimony is admissible is not a question for the jury. *See Baity*, 140 Wn.2d at 9.

Accordingly, we hold that the trial court did not abuse its discretion in rejecting Johnson's proposed jury instruction.

G.    PROSECUTORIAL MISCONDUCT

Johnson argues that the prosecutor committed misconduct by introducing testimony that amounted to an improper judicial comment, introducing prejudicial evidence, and implying that the jury could presume the defendant's guilt. We disagree.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). A prosecutor's questions that are designed to illicit improper testimony constitutes misconduct. *See State v. Padilla*, 69 Wn. App. 295, 299, 846 P.2d 564 (1993) (holding prosecutor committed misconduct by repeatedly asking defendant whether another witness was lying).

In a prosecutorial misconduct claim, a defendant who fails to object to improper conduct may be deemed to have waived the issue on appeal unless the prosecutor's statements are so flagrant and ill-intentioned that the resulting prejudice could not be corrected by a jury instruction. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id.* at 761.

2. Judicial Comment

Johnson argues that the prosecutor committed misconduct by asking Luque if a search warrant was a safer procedure than relying on a suspect's consent to take a blood draw because a search warrant is approved by a judge. She argues that this question amounted to a judicial comment on the evidence and that the prosecutor acted improperly in asking the question that way.

We concluded above that Luque's testimony did not constitute a judicial comment on the evidence. Accordingly, we hold that it was not misconduct for the prosecutor to elicit this testimony.

3. Prejudicial Evidence

Johnson argues that the prosecutor committed misconduct by introducing the testimony of Chumley, Carey's mother, regarding the cost of Carey's prosthetic leg. Johnson also argues that the court erred in not excluding this evidence.

ER 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

less probable than it would be without the evidence." And relevant evidence is generally admissible. ER 402.

However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. Evidence may be unfairly prejudicial when it excites an emotional rather than a rational response by the jury or when it promotes a decision on an improper basis. *State v. Haq*, 166 Wn. App. 221, 261, 268 P.3d 997 (2012). The trial court has considerable discretion to consider what evidence is relevant and to balance its possible prejudicial impact against its probative value. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014).

Here, the cost of Carey's prosthetic was irrelevant. We do not agree that merely asking the question about the prosthetic rose to the level of prosecutorial misconduct. But the trial court abused its discretion in not excluding this testimony.

However, a trial court's improper admission of evidence generally is nonconstitutional error that requires reversal only if the evidence materially impacted the trial's outcome. *State v. Beadle*, 173 Wn.2d 97, 120-21, 265 P.3d 863 (2011). Erroneous admission of evidence is harmless unless there is a reasonable probability that, but for the error, the verdict would have been materially different. *State v. Ashley*, 186 Wn.2d 32, 47, 375 P.3d 673 (2016). In addition, the improper admission of evidence is harmless if the evidence is of minor significance in reference to the evidence as a whole. *State v. Butler*, 198 Wn. App. 484, 492, 394 P.3d 424, *review denied*, 189 Wn.2d 1004 (2017).

Here, the evidence was of minor significance at trial and Johnson has not shown that the outcome of the trial would have been different if the trial court had excluded the cost of Carey's prosthetic. Accordingly, we reject Johnson's arguments regarding this evidence.

4.    Shifting Burden of Proof

A prosecutor commits misconduct by suggesting that the defendant can be presumed guilty or that the State somehow does not bear the burden of proving its case beyond a reasonable doubt. *Emery*, 174 Wn.2d at 760.

Here, the prosecutor began his closing argument by stating, "every time we have a criminal trial . . . it is because of the actions and the choices of the defendant." RP at 789. The prosecutor went on to note that the State had the burden to prove the elements of the crime beyond a reasonable doubt, emphasizing that the burden was high but not beyond all doubt. In the context of the entire closing argument, the prosecutor did not imply that the jury could infer the defendant's guilt.

Accordingly, we hold that the prosecutor's statement in closing argument did not improperly shift the burden of proof.

5.    Cumulative Error

Johnson argues that even if the prosecutor's individual acts of alleged misconduct do not demonstrate prejudice that would require reversal, the cumulative effect of the prosecutor's misconduct requires reversal. Under the cumulative error doctrine, the defendant must show that the combined effect of multiple errors requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). Reviewing all the evidence, we find no cumulative error that affected Johnson's right to a fair trial.

H.    INEFFECTIVE ASSISTANCE OF COUNSEL

Johnson argues that if this court declines to consider her prosecutorial misconduct claims because of defense counsel's failure to object to that misconduct, she received ineffective

assistance of counsel. However, because we hold that the prosecutor did not commit misconduct, Johnson's ineffective assistance of counsel claim fails.

CONCLUSION

We affirm Johnson's conviction of vehicular assault.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
WORSWICK, J.

_____
MELNICK, J.